IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>MARTRELL ANTONIO HARRIS,<br><br>Defendant. | NO.1:17-CR-00071-TH |

**REPORT AND RECOMMENDATION GRANTING DEFENDANT'S OPPOSED MOTION TO DISMISS THE INDICTMENT (DOC. NO. 36)**

On June 13, 2018, the Defendant, Martrell Harris (Harris), filed an "Opposed Motion to Dismiss the Indictment." Doc. No. 36. Approximately two weeks later, Harris filed his "Amended Motion to Dismiss the Indictment."[1] Doc. No. 38. On June 29, 2018, United States District Judge Thad Heartfield referred both motions to the undersigned United States Magistrate Judge for proposed findings and a recommended disposition. Doc. No. 40. On July 23, 2018, the Government filed a response in opposition to both motions. Doc. No. 47. The undersigned heard oral argument on the motions on July 26, 2018. Because Harris' civil rights were fully restored after his felony conviction, the Indictment fails to allege a violation of 18 U.S.C. § 921(g)(1), and the motion to dismiss should be granted.

## I. Background

For purposes of the motion, the factual history is undisputed. On March 22, 2016, Beaumont, Texas police stopped Harris' vehicle for speeding. Harris voluntarily disclosed to the police officer that he had a handgun in his vehicle. The officer then searched his vehicle and

[1] The "Amended Motion to Dismiss" only adds a statutory provision that Harris claims entitles him to dismissal of the indictment and is not substantively different from the original "Motion to Dismiss." Accordingly, the undersigned will analyze both motions together.

discovered a firearm on the rear passenger floorboard along with a high-capacity magazine containing thirty-two rounds. Doc. No. 39, at 3; Doc. No. 47, at 3. Over a year later, Harris was charged in a two-count indictment alleging that he possessed a firearm (Count One) and ammunition (Count Two) after being convicted of a felony, specifically a conviction for possession of cocaine in East Baton Rouge Parish, Louisiana, in 1997. *See* 18 U.S.C. § 922(g)(1); Doc. No. 2. Harris has pleaded not guilty to the Indictment, and the case is currently set for jury selection and trial for September 17, 2018.

The dispute underlying the motion to dismiss focuses on whether Harris' prior felony conviction—in which he received a "First Offender Pardon" peculiar to Louisiana law—constitutes a "crime punishable by imprisonment for a term exceeding one year" as defined in 18 U.S.C. § 921(a)(20). At issue is whether the "First Offender Pardon" sufficiently restored his civil rights such that his prior Louisiana felony conviction falls outside the definition of a "crime punishable by imprisonment for a term exceeding one year." *Id.*

On December 5, 1997, Harris was placed on three years of probation for felony possession of cocaine. Doc. No. 39-1. On January 30, 2001, the Louisiana probation authorities sent Harris a "Verification of First Offender Pardon" stating that he completed his probationary sentence and met all the requirements of such pardon as outlined by LA. STAT. ANN. § 15:572. Doc. No. 39-2. The verification stated that he was fully pardoned for the offense and that all rights of citizenship and franchise were restored in Louisiana, except the right to receive, possess, or transport a firearm. *Id.* The verification then informed Harris that his right to receive, possess, or transport firearms was controlled by LA. STAT. ANN. § 14:95.1. *Id.* That statute provides that it is illegal to possess a firearm after a felony drug conviction such as Harris', unless ten years have passed since the expiration of the probationary sentence and the

person has not been subsequently convicted of any felony. LA. STAT. ANN. § 14:95.1; *Louisiana v. Castor*, 194 So.3d 668, 672 (La. App. 2d Cir. 2016). Because the ten-year period elapsed in 2011, and he has not been convicted of another felony, Harris argues that his civil rights—including his right to possess a firearm—were fully restored before his arrest in 2016. Thus, he was not prohibited under federal law from possessing a firearm, despite his previous conviction for felony possession of cocaine. The Government disagrees. Under Louisiana law, Harris cannot obtain a permit to carry concealed handguns because of his previous felony conviction. Accordingly, the Government argues that his civil rights have not been fully restored, and thus he cannot possess firearms as a matter of federal law under the Supreme Court's decision in *Caron v. United States*, 524 U.S. 308 (1998).

## II. Law and Analysis

### A. Legal Standard for Motion to Dismiss

Prior to trial, a defendant is entitled to raise the defense that there is a defect in the indictment because it fails to state an offense. FED. R. CRIM. P. 12(b)(3)(B)(v). A court can properly rule on such a motion when its resolution rests entirely on a legal question and the underlying facts are undisputed. *United States v. Flores*, 404 F.3d 320, 323 (5th Cir. 2005), abrogation on other grounds recognized by *United States v. Garcia*, 707 F. App'x 231, 234 (5th Cir. 2017); *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011); *see also United States v. Lim*, 17-30469, 2018 WL 3635229 (5th Cir. July 31, 2018). The issue in this motion to dismiss is purely a question of law—whether Harris' rights were sufficiently restored by the state of Louisiana such that his prior conviction for possession of cocaine does not constitute a felony offense for purposes of 18 U.S.C. § 922(g). Moreover, the Government does not contest that Harris' motion to dismiss is a proper vehicle to raise such a legal argument.

**B. The Substantive Offense**

It is unlawful for any person who has been convicted in any court of a "crime punishable by imprisonment for a term exceeding one year" to possess in or affecting commerce, any firearm or ammunition. 18 U.S.C. § 922(g). What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. 18 U.S.C. § 921(a)(20). Any conviction for which a person has had his civil rights restored shall not be considered a conviction for purposes of § 922(g), *unless such restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms* (the "unless clause."). *Id.*

In the Fifth Circuit, a two-part test is employed to determine whether a convicted felon's rights were "restored" under § 921(a)(20). *United States v. Dupaquier*, 74 F.3d 615, 617 (5th Cir. 1996). First, the court determines whether "the state which obtained the underlying conviction revives essentially all civil rights of convicted felons, whether affirmatively with individualized certification or passively with automatic reinstatement[.]" *Id.* (quoting *United States v. Thomas*, 991 F.2d 206, 213 (5th Cir.), *cert. denied*, 510 U.S. 1014 (1993)). Second, the court determines "whether the defendant was nevertheless expressly deprived of the right to possess a firearm by some provision of the restoration law or procedure of the state of the underlying conviction." *Id.* (quoting *Thomas*, 991 F.2d at 213).

In *Dupaquier*, the defendant was sentenced in 1979 to a term of five years at hard labor in Louisiana state court for burglary and possession of controlled substances. *Id.* at 616. In July 1980, he was discharged from state custody. *Id.* In August of 1990, Dupaquier was arrested by state authorities for possession of firearms by a felon, possession of cocaine with the intent to distribute, and possession of unregistered firearms. *Id.* Pursuant to a plea agreement, Dupaquier

pleaded no contest to the drug charge while the other charges were dismissed. In 1994, based upon the same conduct, he was charged in federal court with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), and possession of a firearm in violation of 18 U.S.C. § 5861(d). *Id.* at 617. According to the indictment, all three offenses occurred on or about August 8, 1990. *Id.* He was subsequently convicted on all three counts. *Id.*

Dupaquier challenged his conviction under § 922(g)(1) as he argued his civil rights were restored by Louisiana law prior to his arrest in 1990. *Id.* Therefore, pursuant to § 921(a)(20), his civil rights were restored and he was not a convicted felon for purposes of § 922(g)(1). *Id.* In applying the two-part test, the Fifth Circuit first began by asking whether Louisiana revived, either passively or actively, essentially all of Dupaquier's civil rights. Under Article I, Section 20, of the Louisiana Constitution, "full rights of citizenship shall be restored upon termination of state and federal supervision following conviction of any offense." *Id.* at 617–18. Thus, under the plain language of the Louisiana Constitution, the court held that his civil rights were fully restored upon his discharge from custody. The court then considered the second part of the test and asked whether state law nevertheless deprived Dupaquier of the right to possess a firearm. *Id.* at 618. In Louisiana, a convicted felon could not possess a firearm until ten years had elapsed from the date of the completion of his sentence. LA. STAT. ANN. § 14:95.1 (1986). Because Dupaquier possessed the firearm about a month after the ten-year period expired, the court held Dupaquier was not deprived of his right to possess a firearm at that time. *Id.* Consequently, the court held that Dupaquier was not a convicted felon within the meaning of §§ 921(a)(20) and 922(g)(1), reversing his conviction. *Id.* at 619.

At the time Harris was arrested in the instant case, he met the two-part test set forth in *Dupaquier*. First, Louisiana has actively revived Harris' civil rights. On January 30, 2001, the Louisiana probation authorities sent Harris a verification of "First Offender Pardon." Doc. No. 39-2.[2] In that document, the authorities expressly stated that as of December 5, 2000, Harris was fully pardoned for his prior offense of possession of cocaine and that all rights of citizenship and franchise were restored in Louisiana, except the right to receive, possess, or transport a firearm. *Id.* As Louisiana still deprived Harris of the right to possess firearms at that time, he passed the first—but not the second part of the *Dupaquier* two-part test. Instead, the verification directly stated that his right to receive, possess, or transport firearms was controlled by LA. STAT. ANN. § 14:95.1—the same statute analyzed by the Fifth Circuit in determining the second part of the *Dupaquier* two-part test. Like Dupaquier, Harris was only deprived of his right to possess a firearm for ten years after he was pardoned from the offense—that is, until December 4, 2010. Because Harris' arrest occurred on March 22, 2016, he passes the two-part *Dupaquier* test and his civil rights were restored for purposes of § 921(a)(20), excluding his prior conviction for purposes of § 922(g).

### C. The Government's Response and Arguments

Despite Harris' restoration of his civil rights—and his ability to possess a handgun under Louisiana law—the Government notes Harris is still not allowed to obtain a permit to carry a concealed handgun under Louisiana law. *See* LA. STAT. ANN. § 40:1379.3(C)(10). Pursuant to

[2] If the individual is a first offender and has completed his sentence, he is eligible for a "First Offender Pardon" memorialized by a certificate recognizing that the individual is fully pardoned for the offense and has all the rights of citizenship and franchise. LA. STAT. ANN. § 15:572(D). Article I, Section 20 of the Louisiana Constitution also restores full rights of citizenship to an individual after the termination of state and federal supervision following the conviction for any offense. Dupaquier's rights were restored pursuant to the Louisiana Constitution, but Harris mostly advances his civil rights restoration argument based upon the "First Offender Pardon" statute. It does not appear that there is any significant difference between the two for purposes of this motion, and the Government contends that Harris' rights were restored pursuant to the Louisiana Constitution as well. Doc. No. 47, at 10–11.

the Supreme Court's interpretation of the "unless clause" in *Caron*, the Government argues Harris' civil rights were not "fully restored" because his status as a felon "counts for some purposes under state law." Doc. No. 47, at 1. Recognizing that the Fifth Circuit has not addressed this issue, the Government cites several cases in other courts of appeal and district courts within the Fifth Circuit to support its argument.

**1. *Caron v. United States***

Gerald Caron was convicted of possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). *Caron*, 524 U.S. at 309. Because he had previously been convicted of violent felonies (one in California and three in Massachusetts), he was subject to a sentence enhancement under 18 U.S.C. § 924(e). *Id.* However, Caron contended the court should not have counted his previous Massachusetts convictions because his civil rights were restored by operation of Massachusetts law. *Id.* at 311. If his felony convictions were more than five years old, and if he had the necessary firearm permit, Massachusetts law allowed him to possess rifles or shotguns without special restrictions, but he could not possess handguns outside his home or business. *Id.* The parties agreed that Massachusetts law restored Caron's civil rights. *Id.* at 313. Therefore, the question presented was whether the handgun restriction activated the "unless clause," making the convictions count under federal law. *Id.*

To repeat, the "unless clause" prohibits the possession of a firearm if the restoration of civil rights "expressly provides that the person may not . . . possess . . . firearms." 18 U.S.C. § 921(a)(20). The statutory ambiguity addressed in *Caron* was what happens when the state restores a person's rights to possess only certain *types* of firearms. *See Caron*, 524 U.S. at 314 ("The phrase 'may not . . . possess . . . firearms' must be interpreted under either of two 'all-or-nothing' approaches. Either it applies when the State forbids one or more types of firearms, as

the Government contends; or it does not apply if state law permits one or more types of firearms, regardless of the one possessed in the particular case."). Taking a strict approach to that particular language, the Supreme Court held that either the restoration "[forbids] possession of '*firearms*' and the convictions count for all purposes, or they did not and the convictions could not count at all." *Id.* at 314 (emphasis added). "So if the Massachusetts convictions count for some purposes, they count for all and bar possession of all guns." *Id.* Accordingly, under an "all-or-nothing" approach, the "unless clause" applies when the State forbids *one or more types of firearms*. Otherwise, the intent of Congress would be frustrated because a felon could conceivably possess a type of firearm in violation of state law, but still not be criminally liable under federal law because state law allowed him to possess a different type of firearm that he never possessed. "Under this view, if petitioner, in violation of [Massachusetts] law, had possessed a handgun, the 'unless clause' would still not apply because he could have possessed a rifle. Not only would this strange result be inconsistent with any conceivable federal policy, but it also would arise often enough to impair the working of the federal statute . . . . Congress cannot have intended this bizarre result." *Id.* at 315. "Permission to possess one gun cannot mean permission to possess all." *Id.* at 316.

What is readily apparent in the instant case is that *Caron's* interpretation of the "unless clause" does not affect Harris. Ten years after Harris completed his sentence, Louisiana law restored his right to possess firearms. LA. STAT. ANN. § 95.1(C). For purposes of that statute, "firearm" means any pistol, revolver, rifle, shotgun, machine gun, submachine gun, black powder weapon, or assault rifle which is designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive. LA. STAT. ANN. § 95.1(D). Unlike in *Caron*, Louisiana's restoration law does not forbid Harris' possession of

certain *types* of firearms. On the contrary, under the laundry list in LA. STAT. ANN. § 95.1(D), Harris has permission to possess all types of firearms, including pistols, machine guns and certain types of assault rifles. Because of Caron's status as a felon, Massachusetts treated him "as too dangerous to trust with handguns[.]" *Caron*, 524 U.S. at 316. Louisiana does not treat convicted felons the same way. While Louisiana law restricts Harris' ability to get a concealed handgun permit, he is nevertheless still allowed to possess a handgun. Because Louisiana's restoration law does not "expressly provide that he may not . . . possess . . . firearms," the "unless clause" does not apply to him.

**2. Courts in other jurisdictions have read *Caron* too broadly**

Because Harris' previous felony conviction prevents him from obtaining a concealed handgun permit under Louisiana law (LA. STAT. ANN. § 40:1379.3), the Government argues the "unless clause" applies because "a state weapons limitation on an offender activates the uniform federal ban on possessing any firearms at all." Doc. No. 47, at 6 (quoting *Caron*, 524 U.S. at 315). The Government cites a number of court decisions from different jurisdictions that have taken this approach.

*a. Sanford*

In *United States v. Sanford*, the defendant was convicted of a violation of 18 U.S.C. § 922(g)(9) because he possessed a firearm after two convictions for domestic assault. 707 F.3d 594, 595 (6th Cir. 2012). Sanford argued that his prior domestic assault convictions should not count as predicate offenses because his civil rights had been restored upon his release from incarceration. *Id.* However, under Michigan law, his domestic assault convictions made him ineligible for a concealed weapons permit for eight years after each conviction. *Id.* at 596 (citing MICH. COMP. LAWS § 28.425b(7)(h)(xv)). The Sixth Circuit noted that Michigan law severely

limited Sanford's right to possess a firearm because, with few exceptions, he could only have a firearm in his house, place of business, or on other land he possessed. *Id.* at 596. The *Sanford* court then began to analyze the differences between the state restrictions in Michigan and the Massachusetts restrictions discussed in *Caron*. The Sixth Circuit found only two relevant distinctions, "[l]ogistically, Sanford's restrictions are similar to Caron's: Sanford is allowed to carry his firearm 'in [his] dwelling house, place of business, or on other land possessed by [him]' but his inability to obtain a concealed weapons permit denies him the freedom to carry a pistol concealed on or about [his] person anywhere in the state." *Id.* at 597 (citing MICH. COMP. LAWS §§ 750.227(2); 28.425c(2)(a)). "Just as the restriction in *Caron* was not a blanket ban on all handgun possession, the restriction here is not a blanket ban on all pistol transportation." *Id.* The Sixth Circuit concluded that "[u]ltimately, Sanford does not have the same freedom to transport his firearm as a Michigan citizen without a domestic assault record." *Id.*

While the Sixth Circuit took great care in its analysis of Michigan law and Supreme Court precedent, the undersigned respectively believes it misread *Caron* as *Sanford* loses sight of the real issue in *Caron*—what happens when a state's civil rights restoration scheme allows convicted felons to possess certain *types* of firearms, but not others. *Caron*, 524 U.S. at 314. In other words, if a state's civil rights restoration law allows a convicted felon the opportunity to possess some types of firearms (but not others), the question relevant to the "unless clause" becomes whether the state prohibited possession of "firearms." *See id.* at 313 ("As for the unless clause, state law permits him to possess *rifles and shotguns* but forbids him to possess *handguns* outside his home or business. The question presented is whether the *handgun restriction* activates the unless clause, making the convictions count under federal law.") (emphasis added). *Caron* juxtaposed the ambiguity in the text of 18 U.S.C. § 921(a)(20), and, citing congressional

intent, the Supreme Court interpreted the former "all or nothing approach" to require that the unless clause applies when the State forbids one or more *types* of firearms. *Id.* at 315–17.

Instead of making that distinction, *Sanford* focused on the similarity of the logistical *effects* of both the Michigan and Massachusetts firearm statutes instead of the wording of the statutes themselves. Unlike in *Caron*, Michigan law did not prevent Sanford from possessing a *handgun* by virtue of his prior conviction. *See Sanford*, 707 F.3d at 596 (listing instances where an individual with his rights restored but without a concealed weapons permit may carry a pistol). Michigan law appears to allow a person with their rights restored the same opportunity to possess any *type* of firearm as those without prior disqualifying convictions, which was not the case in *Caron*. By conflating the effects of how various statutes treat those with prior convictions, *Sanford* held that the "unless clause" is invoked whenever a person with a particular conviction does not have "the same freedom" in certain aspects of transporting or carrying firearms as those without such a conviction. *Id.* at 597. A "dissimilar freedom test" is an overbroad reading of *Caron* and certainly not in the text of § 922(a)(20).

*b. Van der hule*

In *Van der hule v. Holder,* the plaintiff filed suit for injunctive relief, requesting that the court order the Attorney General to approve his purchase of a firearm. 759 F.3d 1043, 1045 (9th Cir. 2014). Van der hule was denied his ability to purchase the firearm because of previous felony convictions for sexual intercourse without consent in the state of Montana, although Montana law automatically restored his civil rights after the completion of his sentence. *Id.* What seemingly prevented Van der hule from purchasing a firearm was Montana's restrictions on felons obtaining a concealed weapons permit. Under Montana law, a sheriff could not issue a concealed weapons permit to a person convicted of a felony or a crime that includes an element

of sexual intercourse without consent. *Id.* at 1047 (citing MONT. CODE ANN. § 45-8-321(1)(c)(i),(ii)). A permit to carry a concealed weapon allows the holder to conceal a handgun in certain locations where it would otherwise be unlawful to do so. *Id.* at 1047. The issue as presented in *Van der hule* was whether this restriction was a restriction on his right to possess firearms sufficient to trigger the unless clause in 18 U.S.C. § 921(a)(20) in light of *Caron*. *Id.* at 1048. As opposed to *Sanford*, *Van der hule* recognized the appropriate distinction between Montana and Massachusetts' firearms law.

> Montana's restriction differs from Massachusetts' restriction at issue in *Caron* in an important regard. Massachusetts permitted Caron to own firearms, including rifles, shotguns, and handguns, but he could not carry the handguns outside of his home or business. Van der hule, by contrast, may carry any firearms Montana permits others to carry; he is restricted, however, in that he is barred from obtaining a permit to carry concealed handguns. Montana's scheme is thus less restrictive than Massachusetts'. . . . In one sense Montana does not restrict Van der hule from possessing any firearms. There are no firearms that others may possess in Montana that Van der hule cannot own; indeed, there are no firearms that Van der hule cannot lawfully carry in Montana.

*Id.* at 1048–49. Yet, somewhat puzzling, *Van der hule*, like *Sanford* before it, then focused on the *effects* of Montana's concealed permit law: "Like Massachusetts' restriction in *Caron*, Montana['s concealed permit restriction for felons] has *effectively* imposed a time, place, and manner restriction on Van der hule's right to possess firearms. After *Caron*, we think that is sufficient to trigger the 'unless clause' in § 921(a)(20)." *Id.* at 1049 (emphasis added).

*Van der hule* does not cite, and the undersigned cannot find, any language in *Caron* that holds the "unless clause" applies when a state statute imposes *any* "time, place, and manner restriction" for a felon possessing a firearm. Again, because of the ambiguity in § 921(a)(20), *Caron* analyzed state statutes that prohibited convicted felons with their civil rights restored from possessing certain *types* of firearms, not on statutes that concern *time, place, or manner*

restrictions for a felon to possess a firearm. *Van der hule's* holding would edit the "unless clause" in red-line comparison to read: "unless such pardon, expungement, ~~or~~ restoration of civil rights[, or any other state statute] expressly ~~provides that the~~ [limits the] person['s ability to] ~~may not~~ ship, transport, possess, or receive firearms." Thus, the undersigned respectively believes that *Van der hule's* interpretation of *Caron* is similarly too extensive and divorced from the actual text of the "unless clause."

*c. Sam*, *Viola*, and *Axton*

The Government also cites a trio of Louisiana district court cases that hold the "unless clause" is triggered by Louisiana's restriction on felons obtaining concealed handgun permits. Like Harris, the defendant in *Sam* similarly received the "first offender pardon" after a felony conviction pursuant to LA. STAT. ANN. § 15:572. *United States v. Sam*, CR 6:15-00254, 2016 WL 1600229, at *1 (W.D. La. Mar. 23, 2016), report and recommendation adopted, CR 6:15-00254, 2016 WL 1573002 (W.D. La. Apr. 18, 2016). In *Sam*, it was uncontested that under Louisiana law the defendant was no longer prohibited from possessing a firearm at the time of his arrest, but he was prohibited from obtaining a concealed carry permit for any firearm. *Id.* *Sam* held that:

> Although the Fifth Circuit has not addressed this precise issue, the [c]ourt finds the reasoning in *Sanford* and *Van der hule* persuasive and correct under the *Caron* decision. Louisiana law, like the state laws at issue in *Sanford* and *Van der hule*, prohibits convicted felons, like Sam, from obtaining a concealed carry permit. This restriction prohibits Sam from both possessing and transporting a firearm in the same manner as those who do not have a felony conviction. In short, Louisiana has deemed Sam too dangerous to obtain a concealed carry permit and this finding, under *Caron*, is sufficient to trigger the federal ban contained in the "possess" and "transport" elements of the "unless clause" of § 920(a)(20). Stated differently, because Sam does not have the same freedom to transport and possess a firearm as a Louisiana citizen without an aggravated battery conviction, under the "all or nothing" approach adopted in *Caron*, this

> restriction is sufficient to trigger the "unless clause." Therefore, Sam's prior state court aggravated battery conviction is a proper predicate offense for Count One of Sam's indictment charging him with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1).

*Id.* at *5. In *Viola*, under similar facts, the court was persuaded by the reasoning in *Sanford*. *United States v. Viola*, 6:15CR00253-01, 2016 WL 3040695, at *3 (W.D. La. May 24, 2016), reconsideration denied, 6:15-CR-00253-01, 2016 WL 7443676 (W.D. La. Dec. 22, 2016). In *Axton*, again under similar facts, the court was persuaded by *Sanford*, *Van der hule*, and *Sam*. *Axton v. United States Dep't of Justice*, CV 16-5419, 2016 WL 4496765, at *1 (E.D. La. Aug. 26, 2016). Because these courts relied upon *Sanford* and *Van der hule's* interpretation of *Caron*—to which the undersigned has already explained disagreement—these non-controlling authorities are not persuasive.

**3. *Caron* has not eroded *Dupaquier*'s holding**

The Fifth Circuit has had several opportunities to revisit the two-part *Dupaquier* test in light of *Caron*. In *United States v. Osborne,* the defendant was convicted of felon in possession of ammunition in violation of § 922(g)(1). 262 F.3d 486 (5th Cir. 2001). In 1975, Osborne completed two sentences for burglary at which time Illinois law restored his right to vote, serve on juries, and administer estates once he completed those sentences. *Id.* at 588. At that time, Illinois law permitted convicted felons to possess firearms five years after the completion of their sentence. *Id.* Four years after Osborne was allowed to possess firearms, Illinois changed its law to prohibit felons from ever possessing firearms, even those whose right to possess firearms were restored prior to the change in the law. *Id.*

In 1999, Osborne admitted to an FBI agent that he possessed five .357 Magnum bullets. *Id.* However, he argued that he was not a convicted felon for purposes of § 921(a)(20) and was

allowed to possess the ammunition because his civil rights were restored by Illinois law five years after he completed his sentences for burglary. *Id.* The Fifth Circuit found Osborne passed the *Dupaquier* two-part test: (1) Illinois restored essentially all civil rights of convicted felons; and (2) did not expressly deprive him the right to possess a firearm (although it involved a five-year waiting period). *Id.* at 489–90.

There are two important aspects of *Osborne*. First, recognizing *Caron*, the Fifth Circuit stated unequivocally that "[d]ecisions by the Supreme Court have not eroded *Dupaquier's* controlling force." *Id.* at 490. Second, the Fifth Circuit held that it is a question of federal law whether a state restriction of a felon's civil rights triggers the "unless clause" of § 921(a)(20). *Id.* To this end, the court ignored the fact that Osborne could no longer possess firearms pursuant to Illinois law. Instead, it focused on the plain and unambiguous language in § 921(a)(20) concerning "restoration of civil rights." *Id.* at 491 ("[I]t cannot be that 'such . . . restoration' includes laws that had not been passed at the time the restoration occurred. *By contrast, the statute does not read* '*unless state law expressly provides that the person may not possess firearms*.'") (emphasis added). It is true that the law preventing Harris from obtaining a concealed handgun permit was passed before his right to possess firearms was restored in 2010. *See Viola*, 2016 WL 3040695, *3 ("This lifetime restriction on a convicted felon's ability to obtain a concealed carry permit went in to effect on April 19, 1996.") (citing Acts 1996, 1st Ex. Sess., No. 4, § 1). However, the salient point of *Osborne* is that the Fifth Circuit completely ignored the legality of his possession of firearms under Illinois state law and instead focused on the restoration of his civil rights. If Osborne could not be convicted of a violation of § 922(g) when he was prohibited from possessing a firearm under Illinois law, then Harris certainly

cannot be convicted of a violation of § 922(g) when Louisiana law specifically *allows* him to possess a firearm, albeit one that is not concealed.

*United States v. Washington*, 544 F. App'x. 365 (5th Cir. 2013) is also instructive. In *Washington*, the defendant was convicted of a violation of § 922(g)(1). While he received the same "first offender pardon" as Harris, he possessed a firearm within the prohibited ten-year period after his conviction in violation of Louisiana law. *Id.* at 367. Washington claimed the "first offender pardon" certificate was not sufficiently explicit about this deprivation of his firearm rights.[3] *Id.* Disagreeing, the Fifth Circuit held that Washington's "first offender" certificate, while not a model of clarity, was neither silent as to his firearm rights nor susceptible to an objective reading that those rights were restored. *Id.*

*Washington* is distinguishable because Harris did not possess the firearm until ten years had elapsed from the date of the completion of his sentence. LA. STAT. ANN. § 14.95.1 (1986). Setting that aside, *Washington* held that if a state restores an individual's civil rights by issuing a certificate, that certificate must expressly limit the right to possess firearms. *Id.* at 367. "In such cases, a reservation in a corner of the state's penal code cannot be the basis of a federal prosecution." *Id.* at 367 (citations and internal quotation marks omitted).

Here, Harris' verification of "First Offender Pardon" stated that he was fully pardoned for the offense and that all rights of citizenship and franchise were restored in Louisiana, except the right to receive, possess, or transport a firearm. Doc. No. 39-2. The verification then explicitly stated that his right to receive, possess, or transport firearms is controlled by LA. STAT. ANN. § 14:95.1—the aforementioned statute that requires a felon to wait ten years until his firearm

---

[3] The certificate read: "The right to receive, possess or transport a firearm may not be restored unless all legal provisions are met and should be determined through the local law enforcement agency." *Id.*

rights are restored. Now, even though those ten years have elapsed, the Government contends his firearm rights are not actually fully restored because he is ineligible to receive a concealed handgun permit, a restriction tucked away twenty-six sections over in the Louisiana Revised Statutes. *See* LA. STAT. ANN. § 40:1379.3. Thus, as *Washington* admonished, this is certainly such a case where a reservation in a corner of a state's penal code is the basis of a federal prosecution.

## III. Conclusion and Recommendation

Harris' "First Offender Pardon" by the state of Louisiana restored "essentially all his civil rights" and his right to possess a firearm ten years after the effective date of the pardon in 2000. Furthermore, the pardon did not expressly deprive him of his right to possess a firearm by some provision of Louisiana law, notwithstanding his inability to obtain a concealed handgun permit. As such, Harris passes the Fifth Circuit's two-part test as outlined in *United States v. Dupaquier*, 74 F.3d 615, 617 (5th Cir. 1996), and his civil rights were restored under § 921(a)(20). Because Harris' civil rights were restored, including his right to possess a firearm ten years after he received his "First Offender Pardon," Harris' prior conviction does not constitute a "crime punishable by imprisonment for a term exceeding one year" for purposes of § 921(a)(20). Accordingly, the "Opposed Motion to Dismiss the Indictment" (Doc. No. 36) and "Opposed Amended Motion to Dismiss the Indictment" (Doc. No. 38), should be **GRANTED**.

## IV. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) (Supp. IV 2011), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this

Report; and (4) be no more than eight pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. Tex. Civ. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 10th day of August, 2018.

Zack Hawthorn
United States Magistrate Judge