

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 1:17-CR-71-TH |
| MARTRELL ANTONIO HARRIS | § § | |

# MEMORANDUM OPINION AND ORDER SUSTAINING GOVERNMENT'S OBJECTIONS TO REPORT AND RECOMMENDATION AND <u>DENYING MOTIONS TO DISMISS INDICTMENT</u>

Before the Court are defendant's motions and briefing [Clerk's Docket Nos. 36, 38 & 39] seeking dismissal of the indictment, a *Report and Recommendation Granting Defendant's Opposed Motion to Dismiss the Indictment* [Clerk's Docket No. 51], and the *Government's Objections to the Report and Recommendation of the United States Magistrate* [Clerk's Docket No. 53]. Having considered the motions, briefs, recommendation, objections thereto and the applicable law, the Court enters this memorandum opinion and order denying dismissal of the indictment.

## I. FACTUAL & PROCEDURAL BACKGROUND

For purposes of the legal issues raised in the motion to dismiss, the factual history is not in dispute. On March 22, 2016, police stopped defendant Martrell Antonio Harris on Interstate-10 in Beaumont, Texas for speeding. Mr. Harris voluntarily disclosed to law enforcement that he had a handgun in his vehicle. The officer then searched his vehicle and discovered on the rear passenger floorboard a

firearm and high-capacity magazine containing thirty-two rounds of ammunition.

Mr. Harris was subsequently charged in a two-count federal indictment with possession of a firearm and ammunition after being convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1). The predicate offense for the federal gun charge is a 1997 Louisiana state felony drug conviction of Mr. Harris for possession of a Schedule II controlled substance, a crime for which the punishment exposed him to a term of imprisonment exceeding one year. *See Indictment* [Clerk's Docket No. 2].

Mr. Harris pled guilty to the state felony drug charges on December 5, 1997. *See Sentencing Record in Cause Number 11-96-165* [Clerk's Docket No. 39-1]. The 19th Judicial District Court for the Parish of East Baton Rouge sentenced Mr. Harris to 5 years hard labor in the custody of the Louisiana Department of Corrections, but suspended execution of the sentence. *Id.* The Court placed Mr. Harris on active, supervised probation for a period of 3 years. *Id.*

Mr. Harris completed the terms of his probation on December 5, 2000. Thereafter, the Louisiana Division of Probation and Parole issued to Mr. Harris a document captioned "Verification of First Offender Pardon" which stated that "as provided by the constitution" he had been "fully pardoned" for the 1997 drug offense. *See Verification of First Offender Pardon* [Clerk's Docket No. 39-2]. The document further provided that effective December 5, 2000:

> all rights of citizenship and franchise are restored in Louisiana, except the right to receive, possess or transport a firearm. The right to receive, possess or transport firearms is controlled by R.S. 14:95.1.

*Id.* This statute makes it "unlawful for any person who has been convicted of . . . a felony . . . to possess

a firearm" under state law. La. Rev. Stat. § 14:95.1(A). The statutory prohibition on possession of firearms "shall not apply to any person who has not been convicted of . . . any felony for a period of ten years from the date of completion of sentence." La. Rev. Stat. § 14:95.1(C). Pursuant to this state law, Mr. Harris remained under a Louisiana law 10-year disability making it unlawful for him to possess a firearm until December 5, 2010. Mr. Harris completed this waiting period without incident, and his State law right to possess a firearm was restored to him automatically by operation of law on December 5, 2010.

Although Mr. Harris attempted to have his 1997 felony drug conviction expunged from his criminal record, he was denied relief by the 19th Judicial District Court for the Parish of East Baton Rouge. *See Ruling on Motion for Expungement* [Clerk's Docket No. 47-1]. Louisiana law only allows for the expunction of one felony offense during a fifteen-year period. Because Mr. Harris had a 1996 felony conviction expunged in July 2016, the Court denied the motion to expunge the 1997 felony charge, and that drug conviction remains a part of his criminal record. *Id.* This Court recognizes the apparent incongruity of Mr. Harris having received a first-offender pardon for the 1997 felony conviction despite having a 1996 felony conviction on his record, but the circumstances explaining this anomaly are not before the Court.

Mr. Harris seeks dismissal of the federal charges based on a legal defect in the indictment for failure to state an offense. *See Defendant's Opposed Amended Motion to Dismiss the Indictment* [Clerk's Docket No. 38]. He contends that the 1997 state felony drug conviction cannot serve as a predicate offense for § 922(g)(1) charges because "the State of Louisiana restored his civil rights—including his right to possess firearms—before the date of the incident giving rise to prosecution." *Id.*

The government does not dispute that Mr. Harris received a first-time offender pardon in

connection with the 1997 conviction, that the State restored his basic rights of citizenship, or that his right to possess firearms under State law was restored when the 10-year statutory disability expired on December 5, 2010. Instead, the government takes the position that the 1997 conviction is a proper predicate offense for § 922(g)(1) charges because the State of Louisiana continues to restrict Mr. Harris from the class of persons eligible to obtain a concealed handgun permit based on his criminal history. *See* La. Rev. Stat. § 40:1379.3.

The magistrate judge to whom the motion was referred recommended dismissal of the indictment after concluding that the State of Louisiana fully restored Mr. Harris's rights, including his right to possess firearms. *Report and Recommendation Granting Defendant's Opposed Motion to Dismiss the Indictment* at [Clerk's Docket No. 51]. Important to the magistrate's reasoning was that Louisiana law did not limit the type of firearms Mr. Harris could possess following restoration of his rights. *Id.* at 9, 10, 12-13, 17. The magistrate judge was not convinced that the Louisiana law preventing Mr. Harris from qualifying for a concealed handgun permit amounted to a sufficient restriction on his right to possess or transport firearms so as to render the conviction a predicate offense for federal gun charges. *Id.*

The government filed timely objections to the magistrate's recommendation that the indictment should be dismissed. *Government's Objections to the Report and Recommendation of the United States Magistrate* [Clerk's Docket No. 53]. The defendant did not file objections to the magistrate judge's recommendation or a response in opposition to the government's objections.

## II.  LEGAL STANDARD

Because the government filed specific objections to the report and recommendation, this Court will undertake a *de novo* review as to whether the indictment was legally defective for failing to allege a predicate offense for prosecution under § 922(g)(1).  28 U.S.C. § 636(b)(1).  A defendant is entitled to raise as a defense prior to trial that the indictment is legally defective for failure to state an offense.  FED. R. CRIM. P. 12(b)(3)(B)(v).  A court can rule on such a motion when the alleged infirmity is one of law that requires no determinations of fact.  *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).  The question whether a conviction constitutes a predicate offense for prosecution under § 922(g)(1) is "purely a legal one."  *See United States v. Broadnax*, 601 F.3d 336, 345 (5th Cir. 2010).  Put another way, whether a prior conviction qualifies as a "crime punishable by imprisonment for a term exceeding one year" as that phrase is defined in § 921(a)(20) is a question of law appropriate for consideration by the court on a motion to dismiss.  *Id.*

## III.  LEGAL BACKGROUND

Federal law prohibits "any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm or ammunition.  18 U.S.C. § 922(g)(1).  Known colloquially as "felon in possession," this law was part of the GUN CONTROL ACT OF 1968, which was enacted in response to the precipitous rise in political assassinations, riots, and other violent crimes involving firearms in the 1960's.  *See Lewis v. United States*, 445 U.S. 55, 63, 100 S. Ct. 915, 919-20, 63 L. Ed. 2d 198 (1980).  "The legislative history reveals that Congress believed a uniform national program was necessary to assist in curbing the illegal use of firearms."  *See Dickerson v. New Banner Inst., Inc.*,

460 U.S. 103, 119-120, 103 S. Ct. 986, 995-996, 74 L. Ed.2d 845 (1983), *superceded by statute as recognized in Logan v. United States*, 552 U.S. 23, 128 S. Ct. 475, 169 L. Ed.2d 432 (2007). There was no question that the GUN CONTROL ACT OF 1968 would be more restrictive than the firearm laws in some of the States, and this was one of the express purposes of the 1968 law. Congress determined this uniform federal gun policy was required because State law "provide[d] less than positive assurance" that it was able to adequately identify persons who posed an "unacceptable risk of dangerousness" to be in possession of firearms and ammunition. *Id.*

A state conviction can serve as the predicate offense for violation of federal law making the possession of firearms and ammunition illegal. Until 1986, federal law alone determined which state convictions "counted" for purposes of prosecution under § 922(g), and subsequent actions taken by the state to relieve the offender of some or all of the consequences of the conviction by expunction, set aside, pardon or restoration of rights was of no import to that analysis. *See Caron v. United States*, 524 U.S. 308, 315, 118 S. Ct. 2007, 2012, 141 L. Ed.2d 303 (1998). The Supreme Court reasoned this approach would both "ensure greater uniformity in federal sentences" and provide clearer guidance to federal courts given the procedures for the restoration of rights "varied widely" from State to State and yielded "nothing less than a national patchwork." *See Logan v. United States*, 552 U.S. 23, 27, 128 S. Ct. 475, 479, 169 L. Ed.2d 432 (2007).

Congress changed that with the enactment of the FIREARM OWNERS' PROTECTION ACT (FOPA) in 1986. FOPA was passed with the express intention of rolling back certain federal restrictions on the rights of citizens to exercise Second Amendment rights. "Section 921(a)(20) was added to . . . to give federal effect to state statutes that fully 'restore' the civil rights of convicted felons when they are released from

-6-

prison, or are granted a pardon, or have their convictions expunged." *United States v. Thomas*, 991 F.2d 206, 209 (5th Cir. 1993). The FOPA amendment achieved this by redefining "crime punishable by imprisonment for a term exceeding one year" so as to provide that:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, *unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.*"

18 U.S.C. § 921(a)(20)(emphasis added). The italicized portion of FOPA amendment is known in federal jurisprudence as the "unless clause" in what has become a substantial body of ever-evolving federal case law.

Courts have universally observed that FOPA clouded the clarity of what constitutes a proper predicate offense for purposes of § 922(g) and at times generated anomalous outcomes. *See United States v. Thomas*, 991 F.2d at 209; *see also Logan v. United States*, 552 U.S. at 34, 128 S. Ct. at 483. This is because "states have considerably different laws governing pardon, expungement, and forfeiture and restoration of civil rights" and "drastically different policies as to when and under what circumstances such discretionary acts of grace should be extended." *Id.*

Not surprisingly, courts have struggled with determining what constitutes a predicate offense when a state has restored rights to offenders post-conviction. To assist in this regard, the Fifth Circuit developed a two-step approach which isolates the two very distinct inquiries introduced by the FOPA amendment. The first consideration is whether the State which obtained the underlying conviction has revived essentially all civil rights of the offender, whether affirmatively with individualized certification or passively

by automatic reinstatement. *See United States v. Daugherty*, 264 F.3d 513, 515–16 (5th Cir. 2001). If the State has fully restored civil rights to the offender, then the court proceeds to the second inquiry meant to address FOPA's "unless clause:" whether that restoration contains restrictions on the individual's rights "to ship, transport, possess, or receive firearms." *See United States v. Osborne,* 262 F.3d 486, 489 (5th Cir. 2001).

## IV. ANALYSIS

A.   Step One: Form and Effect of Restoration of Mr. Harris's Civil Rights

The first inquiry is whether Louisiana sufficiently restored Mr. Harris's civil rights. *See United States v. Osborne,* 262 F.3d at 489; *see also United States v. Daugherty*, 264 F.3d at 515–16. There are two ways a person convicted of a felony can have civil rights restored under Louisiana law: a governor's pardon and a "first-time offender pardon." *See Hang Thuy Nguyen v. United States Citizenship & Immigration Servs.*, 847 F.3d at 751–52 (5th Cir. 2017). While the authority for both pardons arises under the state constitution and companion enabling legislation, there are marked distinctions in both how they occur and in the legal effect of the two different types if pardons. La. Const. art. IV, Section 5(E)(1); La. Rev. Stat. § 15:572(A), (B)(1); *see State v. Lemoine*, 919 So.2d 727, 729 (La.App. 5 Cir. 11/29/05).

A commutation issued by the governor is considered a full, complete and unconditional pardon. *Id.*; *see also State v. Adams*, 355 So.2d 917, 921 (La. 1978). Gubernatorial pardons are discretionary acts which involve careful consideration of the individual circumstances of the case. *Id.* Such pardons must be recommended by the State Board of Pardons following review and hearing and require that the offender first pay all court costs. A gubernatorial pardon restores the individual to "a status of innocence," as if the

conviction never occurred. *See Hang Thuy Nguyen v. United States Citizenship & Immigration Servs.*, 847 F.3d at 751–52. Following issuance of a governor's pardon, a conviction cannot be used to enhance punishment in subsequent legal proceedings and any state laws which limits the rights of convicted felons generally do not apply to them. *Id.* If the State of Lousisiana wants to circumscribe the rights of a person receiving a governor's pardon in some way, those limitations must be expressly set out in the pardon.

Mr. Harris did not receive a governor's pardon. Instead, his rights were passively restored by operation of Louisiana law as a first-time offender. La. Const. art. IV, Section 5(E)(1); La. Rev. Stat. § 15:572 (B)(1),(D). A first-time offender pardon take effect "automatically upon completion of [a] sentence, without a recommendation of the Board of Pardons and without action by the governor." *See Nguyen v. United States Citizenship & Immigration Servs.*, 847 F.3d at 751–52. The rights restored by a first offender pardon are limited to basic rights "such as the right to vote, work, or hold public office." *State v. Adams*, 355 So.2d at 917. A first-time offender pardon does not restore status of innocence to the offender or erase the existence of the conviction in the offender's criminal record. Because of this, a conviction for which a first-offender pardon issued may be used in subsequent proceedings to enhance punishment and to adjudicate a person as a habitual offender. *Id.* at 922. State law makes it unlawful for persons convicted of certain felonies to possess firearms for a period of ten years following completion of sentence. La. Rev. Stat. § 14.95.1(C). It is well settled that a first-time offender pardon does "not include the right to possess firearms in contravention" of this state law. *See State v. West*, 754 So.2d 408 (La.App. 2 Cir. 3/1/00).

Louisiana law requires that the Division of Probation and Parole issue a certificate informing eligible persons that they have been "fully pardoned for the offense" and that "all rights of citizenship and franchise" were restored automatically by operation of law. La. Rev. Stat. § 15:572(D). Mr. Harris

received such a document and filed a copy of the verification with his briefing. *See Verification of First Offender Pardon* [Clerk's Docket No. 39-2]. It is important to note that this document is designed to inform the person what has taken place by operation of law, but it is not itself a pardon. *See State v. West*, 754 So. 2d at 410.

This Court finds that the basic rights of citizenship and franchise were restored automatically to Mr. Harris as a first-time offender when he successfully completed his probationary sentence on December 5, 2000. Because he remained subject to a 10-year disability on firearm possession under Louisiana law the Court finds that his rights were "sufficiently restored" by operation of law on December 5, 2010. As the recipient of a first-time offender pardon and not a gubernatorial pardon, Mr. Harris was not reinstated to status of innocence, the existence of the conviction was not erased, and the 1997 conviction may be used in subsequent proceedings to enhance punishment and to adjudicate habitual offender status.

B.  Step Two: Did the Restoration Contain Restrictions on His Firearm Rights

Having determined the basic rights of citizenship were sufficiently restored to Mr. Harris, the Court next considers whether the restoration included a restriction on his right "to ship, transport, possess, or receive firearms" because of his criminal history. 18 U.S.C. § 921(a)(20)(B). If Louisiana imposed such a restriction on Mr. Harris, then the 1997 conviction continues to operate as a predicate offense for § 922(g) charges notwithstanding the apparent restoration of his rights of citizenship. This second inquiry gives effect to the "unless clause" included in the FOPA amendment.

Determining what Louisiana firearm restrictions apply to Mr. Harris turns on the type of pardon he received. Where, as here, a pardon arises automatically by operation of law, the Court looks to the

general law of the State to determine whether any provision or procedure of state law limits his firearms rights. *See United States v. Daugherty*, 264 F.3d at 516. Had Mr. Harris been the recipient of a gubernatorial pardon, that document, rather than the general law of the state, would have had to expressly set forth any restrictions on his firearm rights that did not apply to the general public.

Regardless of criminal history, it is illegal to possess a concealed handgun without a state permit in Louisiana. In 1996 the State of Louisiana enacted a concealed carry law. To qualify for a concealed handgun permit, a Louisiana resident cannot be, among other things:

> [I]neligible to possess a firearm by virtue of having been convicted of a felony. A conviction for a felony offense which has been expunged . . . shall not be considered a conviction for the purposes of this Paragraph if ten years have elapsed since the completion of the resident's probation, parole, or suspended sentence.

La. Rev. Stat. § 40:1379.3. Although the 10-year statutory disability on Mr. Harris's right to possess a firearm lapsed, Louisiana law continues to consider him ineligible for a permit to possess a concealed handgun because the 1997 state felony conviction. The State of Louisiana will not issue concealed carry permits to persons who have unexpunged first-time offender felony pardons on their criminal records. Put another way, Mr. Harris is excluded from the class of persons who can be permitted to carry a concealed weapon under Louisiana law because of the 1997 felony conviction.

The question then becomes whether excluding Mr. Harris from eligibility for a concealed handgun permit is a restriction on his right "to ship, transport, possess, or receive firearms" sufficient to trigger the "unless clause." 18 U.S.C. § 921(a)(20). If this exclusion does restrict his firearm rights, then the 1997 drug conviction continues to serve as a proper predicate offense for federal prosecution of Mr. Harris as a state felon in possession.

-11-

Neither the Supreme Court nor the Fifth Circuit has reached the precise issue whether Louisiana state law excluding persons from eligibility for a concealed handgun license because of their criminal history is a restriction sufficient to trigger the "unless clause." This Court will therefore look to the Supreme Court's construction of the "unless clause" generally and the application of that reasoning by courts of appeal and district courts considering whether State laws excluding persons with certain criminal histories from eligibility for state firearm permits trigger the "unless clause" by restricting the right "to ship, transport, possess, or receive firearms."

Supreme Court's "All-or-Nothing" Interpretation of the "Unless Clause"— *Caron v. United States*

The Supreme Court interpreted the "unless clause" in *Caron v. United States*, 524 U.S. 308, 118 S. Ct. 2007 (1998). In that case, Mr. Caron appealed a federal sentence for being a state felon in possession of a firearm. *Caron,* 524 U.S. at 310-11. Mr. Caron had an extensive criminal history dating back 35 years which included felony convictions in California and Massachusetts. His civil rights had been restored by operation of Massachusetts law, and the 5-year state disability on his ability to own and possess firearms (including handguns) at his home and place of business only had expired. *Caron,* 524 U.S. at 313-16. Because of his convictions, he remained subject to a Massachusetts law preventing him from carrying one type of firearm—a handgun—outside his home or place of business.

Mr. Caron was charged with unlawful possession under federal law of rifles, shotguns, and ammunition at his home, possessions that were permissible under Massachusetts law. There was no allegation that he was in violation of the State restriction that triggered the "unless clause" giving rise to his federal prosecution, to wit: carrying a handgun outside his home or place of business.

-12-

Mr. Caron focused on the nature of the actual possession at issue and argued that only a possession violating State law triggers the "unless clause" thereby giving rise to federal prosecution. Mr. Caron's argument distilled: his possession of rifles, shotguns, and ammunition at his home was legal under Massachusetts law, so it could not trigger the "unless clause" and give rise to federal prosecution. To be prosecuted federally as a state felon in possession, he argued, he would have had to be in violation of the Massachusetts law that restricted his right to carry a handgun outside his home or business, which he was not.

While acknowledging the common sense appeal of this approach, the Supreme Court held that the words of the FOPA amendment do not permit such an interpretation. *Caron,* 524 U.S. at 314-15. The statute dictates that the focus be on the *restoration* of the offender's rights and not on the nature of the possession. "The unless clause looks to the terms of the past restorations alone and does not refer to the weapons at issue" in the case. *Id.* The relevant inquiry is whether the restoration includes limitations on an offender's ability to "ship, transport, possess or receive firearms" vis-a-vis persons in the state without that offender's criminal history. The Court recognized that federal law alone controls interpretation of the "unless clause" and that the legality of the possession under State law in no way affects this analysis. *Id.*

The Court found that Massachusetts treats Mr. Caron as too dangerous to trust with the same handgun rights afforded persons without his criminal history. "The State has singled out the offender as more dangerous than law-abiding citizens, and federal law uses this determination to impose its own broader stricture." *Id.* This implicit finding of dangerousness by the State triggers the "unless clause" and makes his State convictions proper predicate offenses for federal prosecution. This is because Congress has adopted a "single, national, protective policy, broader" than that required by state law to "'keep guns

away from offenders who, the Federal Government feared, might cause harm, even if those persons were not deemed dangerous by States." *Id.* at 316.

Federal law "must reach primary conduct not covered by state law" if it is to provide the "positive assurances" Congress found lacking in state firearms laws when it enacted the GUN CONTROL ACT OF 1968. *Id.* "Any other result would reduce federal law to a sentence enhancement for some state-law violations, a result inconsistent with the congressional intent" of the 1968 law. *Id.*

*Caron* is often cited for what is known as the "all-or-nothing" approach to the interpretation of the "unless clause." At its most basic level, this construction means that if the State conviction counts for any purpose under State law, then the conviction counts for all purposes of federal gun control laws. *Id.* at 314. Unlike the magistrate judge, this Court finds the reasoning of *Caron* directly applicable to the case at bar. It is incumbent on this Court to determine whether Mr. Harris's ineligibility for a Lousiniana concealed handgun permit restricts his ability "to ship, transport, possess, or receive firearms" under the unless clause so as to render his 1997 conviction a proper predicate for federal prosecution. The case informs this Court's analysis in two important ways: (1) *Caron* makes clear the focus is on the scope of the *restoration* of rights and not on the type of possession at issue; and (2) the "all-or-nothing" approach adopted in *Caron* means that if Mr. Harris's 1997 conviction counts for any purpose under Louisiana law, then it counts for purposes of federal law making his possession of all firearms and ammunition illegal.

As previously considered, Mr. Harris's rights were restored passively, by operation of Louisiana constitutional and statutory laws, which automatically pardons certain first-time offenders, rather than by way of a discretionary gubernatorial pardon. As such, the general law of Louisiana defines his State firearm

rights and not any certificate or verification issued by the governor. Had he received a governor's pardon, the Court acknowledges that the pardon document itself would have had to expressly provide that Mr. Harris was ineligible for a concealed handgun permit for that restriction to apply to him. This is because the effect of a governor's pardon is to return the offender to a status of innocence, erasing the existence of the conviction. A first-time offender pardon does not have this effect under Louisiana law, and Mr Harris remains subject to laws applicable to persons convicted of felony crimes generally, including the law preventing issuance of a handgun permit to him.

The Court also disagrees with the magistrate's conclusion that the *Caron* holding is limited to State restrictions that circumscribe the possession of certain *types* of firearms. Quite the opposite, there was no type of firearm that Mr. Caron could not legally own, possess or carry at his home or business under Massachusetts law. The restriction at issue prevented him from carrying one type of firearm—a handgun—when not at his home or place of business. Although the Supreme Court did not frame the Massachusetts restrictions as a time, place and manner limitation on Mr. Caron's firearm rights, that is as a factual matter what it was. This type of restriction triggered the "unless clause" even though it only limited but did not completely take away his right to possess and transport handguns.

<u>Ninth Circuit: Ineligibility for Concealed Permit Triggers Unless Clause —*Van der hule v. Holder*</u>

The Ninth Circuit considered whether a Montana state law precluding issuance of a concealed weapons permit to persons convicted of certain felonies triggered the "unless clause" in *Van der hule v. Holder*, 759 F.3d 1043, 1045 (9th Cir. 2014). Mr. Van der hule pled guilty to sexual assault charges and was sentenced to prison for a term of 25 years. When he completed service of his sentence, Mr. Van der hule had his rights automatically restored by operation of Montana state law, much in the same way that Mr.

Harris did. His state firearm rights were restored such that he could legally possess and carry all firearms allowed by Montana law. Montana also had a concealed weapons statute that enabled permit holders "to conceal a handgun in certain locations where it would otherwise be unlawful to do so." *Id.* at 1047. Because of the nature of his prior State convictions, Mr. Van der hule was ineligible for a concealed weapons permit under Montana law. *Id.*

The appellate court framed the issue as "whether this prohibition on carrying a concealed weapon in certain locations is a restriction that triggers the 'unless clause' in 18 U.S.C. § 921(a)(20)." *Id.* at 1048. The Court held that the Montana law preventing Mr. Van der hule from receiving a permit to carry a concealed weapon restricted the way in which he could possess firearms sufficient to trigger the "unless clause." *Id.* at 1049. The court observed that:

> Van der hule is more limited in the control he may exercise over a handgun than a person with a permit to carry a concealed handgun is because he may not place one underneath his clothing or continue to carry it if his clothing obscures the handgun. Quite simply, there are restrictions on the ways he may use a handgun that do not apply to others who lack a similar criminal history. These restrictions limit Van der hule's ability to possess a handgun and bring him within the 'unless clause" in 921(a)(20).

*Id.* at 1049-50. The Ninth Circuit held that imposition of a "time, place or manner restriction" by the State on the way in which a person with certain criminal histories can possess firearms triggers the "unless clause" making the State conviction a proper predicate offense for federal prosecution. *Id.*

In reaching this conclusion the Ninth Circuit was guided by the reasoning and reach of the Supreme Court in *Caron*. Utilizing the all-or-nothing approach espoused by the Supreme Court in *Caron*, the Ninth Circuit concluded that exclusion from eligibility for a concealed weapons permit was a restriction in time, place or manner that limited Mr. Van der hule's right to possess or carry a firearm sufficient to trigger the

unless clause.

Sixth Circuit: Restriction on Firearm Privilege Can Trigger "Unless Clause" —*United States v. Sanford*

This Court is also informed by the approach taken by the Sixth Circuit in *United States v. Sanford*, 707 F.3d 594 (6th Cir. 2012). In *Sanford*, the offender moved to dismiss the indictment for failure to state an offense prior to trial advancing a rights restoration argument much like Mr. Harris. Mr. Sanford was convicted of two domestic assault charges in Michigan. After his release from incarceration his civil rights were restored by operation of Michigan law. Notwithstanding this restoration of his rights under State law, Mr. Sanford was ineligible for a concealed weapons permit for a period of 8 years after each conviction. That statutory disability continued to apply to him when it was alleged he violated federal firearms law.

The Court observed that Mr. Sanford's "ineligibility for a concealed weapons permit severely hindered, but did not completely eliminate, his ability to transport a handgun." *Id.* at 596. Nevertheless, the Court found that the State restricted Mr. Sanford in such a way that he did "not have the same freedom to transport his firearm as a Michigan citizen without a domestic assault record" because "his inability to obtain a concealed weapons permit denies him the freedom to carry a pistol concealed on his person anywhere in the state." *Id.*

The Sixth Circuit determined that the Supreme Court's all-or-nothing approach in *Caron* compelled the conclusion that Mr. Sanford's ineligibility for a concealed weapon permit restricted his ability to transport firearms sufficient to trigger the "unless clause." The court cited *Caron* for the proposition that the restriction need not be a complete or blanket ban in order to trigger the "unless clause." The Court held that the restriction triggered the "unless clause" and that Mr. Caron's domestic assault convictions

-17-

were predicate offenses for prosecution under § 922.

It is worth noting that Mr. Sanford argued that the "unless clause" speaks only to the restriction of rights, and cannot be triggered by denial of a State "privilege," such as a permit that expands rights beyond those of ordinary citizens. The court rejected Mr. Sanford's attempt to limit *Caron*'s applicability in this way. It then went on to explicitly overrule a prior conflicting circuit opinion in *United States v. Flores* 118 Fed. Appx. 49 (6th Cir. 2004) on the basis that ineligibility for a concealed weapons permit burdens the ability to transport a firearm in a vehicle so as to trigger the unless clause *Id.* at 598.

Federal District Courts: Ineligibility for Louisiana Handgun Permit Triggers "Unless Clause"

Several district courts in Louisiana have concluded that the Louisiana law excluding persons with certain criminal histories from eligibility for a concealed handgun permit is a restriction sufficient to trigger the "unless clause." *See Axton v. United States Dep't of Justice*, No. CV 16-5419, 2016 WL 4496765 (E.D. La. Aug. 26, 2016)("Because Axton is prohibited under Louisiana law from obtaining a concealed-carry permit due to his prior felony conviction, Axton is unable to possess any firearms pursuant to the 'unless clause' of Section 921(a)(20) despite Axton having been pardoned); *see also United States v. Viola*, No. 6:15CR00253-01, 2016 WL 3040695 (W.D. La. May 24, 2016), *reconsideration denied*, No. 6:15-CR-00253-01, 2016 WL 7443676 (W.D. La. Dec. 22, 2016)(ineligibility for a concealed carry permit under Louisiana law restricts the rights of persons to possess and transport firearms so as to trigger the"unless clause"); *see also United States v. Sam*, No. CR 6:15-00254, 2016 WL 1600229 (W.D. La. Mar. 23, 2016), *report and recommendation adopted*, No. CR 6:15-00254, 2016 WL 1573002 (W.D. La. Apr. 18, 2016)("Louisiana has deemed Sam too dangerous to obtain a concealed carry permit and this finding, under *Caron*, is sufficient to trigger the federal ban contained in the 'possess' and 'transport' elements of the 'unless clause'").

C.  Conclusion

The Court finds that the restoration of Mr. Harris's rights under Lousiana law included restrictions on his ability to possess and transport firearms. Because his rights were passively restored by operation of Louisiana law and not by issuance of a gubernatorial pardon, Mr. Harris remained subject to the laws of the State generally applicable to persons convicted of felonies. The State of Louisiana precludes persons with unexpunged felony convictions like Mr. Harris from the class of persons eligible to receive a permit to carry a concealed handgun. Without a concealed handgun permit, Mr. Harris is limited in the way he can possess and transport handguns vis-a-vis Louisiana residents lacking his criminal record who are eligible for permits. That this limitation is not a total or blanket ban on his right to possess or transport handguns is not determinative. A time, place or manner restriction on an offender's firearm rights based upon their criminal history is sufficient to trigger the "unless clause." That a concealed carry permit can be characterized as a "privilege" that has the effect of expanding firearm rights beyond that of what the general law provides makes no difference to this analysis. Lousisiana has singled out persons like Mr. Harris with unexpunged felonies as more dangerous than law-abiding citizens, and federal law uses this determination to impose restrictions on his possession of firearms and ammunition under federal law. The 1997 State conviction "counts" for the purpose of excluding him from eligibility for a concealed handgun permit, and under *Caron's* all-or-nothing interpretation of the § 921(a)(20) "unless clause," the conviction therefore constitutes an appropriate predicate offense for § 922(g) charges under federal law.

## V.  ORDER

**IT IS THEREFORE ORDERED** that the *Government's Objections to the Report and Recommendation of the United States Magistrate* [Clerk's Docket No. 53] are **SUSTAINED**.

**IT IS FURTHER ORDERED** that the Court **ADOPTS** only the findings in Section I of the *Report and Recommendation Granting Defendant's Opposed Motion to Dismiss the Indictment* [Clerk's Docket No. 51] setting forth the factual background to which no objections were raised.

**IT IS FURTHER ORDERED** that defendant Martrell Antonio Harris's motions [Clerk's Docket Nos. 36 & 38] seeking dismissal of the indictment as legally defective for failure to state a predicate offense for § 922(g) charges are **DENIED**.

**IT IS FURTHER ORDERED** that counsel is **DIRECTED** to confer and recommend to the Court the earliest date this case can be specially set for trial.

**SO ORDERED.**

**SIGNED** this the **11** day of **December, 2018.**

_____
Thad Heartfield
United States District Judge